

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00227-CR

_____


JUAN CARLOS HERNANDEZ, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. CR-10-23406


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

A Fannin County jury convicted Juan Carlos Hernandez of deadly conduct[1] and assessed punishment at ten years' imprisonment in the Texas Department of Criminal Justice—Institutional Division.[2] The sole issue on appeal is whether the trial court erred in permitting evidence of a previous conviction to be admitted during the guilt/innocence phase of the trial. We affirm the judgment of the trial court.

## I. Background

On the evening of March 13, 2010, Enrique Garza walked to Hernandez's home to ask for help in resolving a dispute Garza had earlier in the evening with an individual who allegedly attacked Garza. Hernandez agreed, and they left Hernandez's home in a gold Lincoln Towncar owned by Amanda Morrow. Garza was with Hernandez in the car when they drove by the house where the altercation had taken place earlier that evening. At trial, Garza testified that Hernandez fired three shots from the driver's side window of the vehicle in a residential area in the direction of four people who were sitting on a porch.[3]

---

[1] *See* TEX. PENAL CODE ANN. § 22.05(b) (West 2011).

[2] Punishment was enhanced based on a prior felony conviction.

[3] Because this appeal does not involve a challenge to the sufficiency of the evidence, the factual background is abbreviated.

## II.      Extraneous Offense Evidence

At trial, Morrow testified on cross-examination by the defense that she lived with Hernandez in his home for approximately two months, along with her four children. The State claims the following testimony opened the door to the introduction of evidence regarding Hernandez's prior felony conviction resulting in imprisonment:

> Q.      Ms. Morrow, how long were you living with Juan in his home?
>
> A.      Maybe two months.
>
> Q.      And your four children were there?
>
> A.      Most of the time.
>
> Q.      And how did he treat you?
>
> A.      Fine.
>
> [State]:   Objection, relevance.
>
> THE COURT:   Overruled.   You may answer.
>
> A.      [Morrow] He was good to me and my kids.
>
> Q.      To the children also?
>
> A.      Yes, ma'am.
>
> Q.      And he played games on the computer.   Is that what you said?
>
> A.      Yes, ma'am.
>
> Q.      Was he drunk --

. . . .

A.	No, ma'am.

. . . .

Q.	Has he ever hit you?

A.	No, ma'am.

Q.	Has Rubin ever hit you?

A.	Yes, ma'am.

[State]:	Objection, relevance.

THE COURT:	Sustained.

Q.	What kind of a person would you say Juan is?

A.	He was -- he was a good guy.  He was really nice to me and my kids.  He treated us well.

Outside the presence of the jury, the State asked the trial court to allow a hearing to present evidence of Hernandez's prior felony conviction.  Morrow testified that she was aware that Hernandez spent time in prison, but she did not know what offense he committed.  She was aware that Hernandez and Garza were in prison at the same time.  The State argued that the defense attempted to "place a false impression in the mind of the jury that, quote, Mr. Hernandez is a good guy, and I would like the opportunity to rebut that presumption with this type of evidence."  The defense contended that Morrow's belief that Hernandez was a "good guy" did not imply that he

4

had no prison record.   The trial court overruled the defense objection to the admission of the prior conviction, and the State then questioned Morrow about Hernandez's prior record.[4]

In his sole appellate point, Hernandez contends the trial court erred by overruling his objection and permitting the State to elicit testimony regarding his prior conviction.[5]   Hernandez contends Morrow's testimony does not amount to an assertion that Hernandez did not have prior trouble with the law.   Rather, such testimony merely established that Morrow believed Hernandez was a "good guy." Hernandez maintains that evidence of a previous felony conviction does not counter that testimony.   The State contends the evidence was admissible to rebut and correct the false impression that Hernandez would never engage in criminal conduct.

---

[4]

Q.    You know that Juan Hernandez has been to prison.   Correct?
A.    Yes.
Q.    Yes?
A.    Yes, sir.
Q.    Do you know about the time frame he went to prison?
A.    No, sir.
Q.    Do you know if he and Ricky [Garza] were in prison together?
A.    I don't know if they were together or not - - they were both arrest - - they were both in jail at the same time.
Q.    Okay.   And they were friends before they went to prison?
A.    Yes, sir.
Q.    And they have been friends since they went to prison?
A.    Yes, sir.
Q.    Do you know why Juan went to prison?
A.    No, sir.
Q.    Okay.

[5]At trial, the sole objection to extraneous offense evidence was simply that Morrow's testimony did not open the door to such evidence.   No Rule 403 objection was made.   *See* TEX. R. EVID. 403.   On appeal, Hernandez additionally maintains that the probative value of the evidence was substantially outweighed by its prejudicial effect.   Because this objection was not raised in the trial court, we may not consider it on appeal.   TEX. R. APP. P. 33.1(a)(1)(A); *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g) (objection to relevant evidence under Rule 403 must be made in trial court).

As a general rule, specific acts of misconduct may not be introduced to impeach a party or a witness. *See Prescott v. State*, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988). However, when a party produces evidence tending to create a false impression of his law-abiding behavior, he opens the door on his otherwise irrelevant past criminal history, and opposing counsel may introduce evidence tending to rebut the false impression. *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993), *overruled on other grounds by Ex parte Moreno*, 245 S.W.3d 419, 425 (Tex. Crim. App. 2008); *Prescott*, 744 S.W.2d at 131; *Abshire v. State*, 62 S.W.3d 857, 861 (Tex. App.—Texarkana 2001, pet. ref'd); *Wells v. State*, 880 S.W.2d 185, 189 (Tex. App.—Texarkana 1994, pet. ref'd); *Monkhouse v. State*, 861 S.W.2d 473 (Tex. App.—Texarkana 1993, no pet.). In order for this exception to apply, however, the defense must unambiguously create a false impression of law-abiding behavior, thereby permitting introduction of evidence of past criminal history. *See Delk*, 855 S.W.2d at 704–05.

Because the admission of evidence is a matter within the discretion of the trial court, the admission of evidence is reviewed for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001). The trial court abuses its discretion if its decision to admit a prior conviction lies outside the zone of reasonable disagreement. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992).

We must therefore initially determine whether the defense's cross-examination of Morrow "opened the door" to permit evidence of Hernandez's prior conviction. To determine whether the

evidence was admissible, we consider the testimony in relation to the question asked, examine how broadly the question asked could be interpreted, and analyze the relationship between the question asked and the major substantive issues in the trial. *See, e.g.*, *Delk*, 855 S.W.2d at 704–05; *Grant v. State*, 247 S.W.3d 360, 368 (Tex. App.—Austin 2008, pet. ref'd).

The context of the discussion on cross-examination did not concern Hernandez's past criminal conduct. Rather, the discussion centered on how Hernandez treated Morrow and her children, leading Morrow to conclude, because Hernandez treated them well, that he was a "good guy." Morrow was asked her opinion of the kind of person Hernandez was. Morrow responded with her opinion that Hernandez was a "good guy." We do not believe this testimony can be interpreted so broadly as to imply that Hernandez never engaged in criminal conduct.

Even though this testimony did not create a false impression of law abiding conduct,[6] and was therefore not admissible on that basis, an evidentiary ruling will be upheld on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114,

[6]Cases in which the State's evidence was admissible because the defense opened the door by creating a false impression of law abiding or nonviolent conduct indicate that the false impression must be much clearer than the testimony here. For example, defense testimony in a case involving aggravated sexual assault of a child that the defendant was not the kind of person who would sexually abuse a child, and that he never had an opportunity to do so in his home because no room was ever locked, and friends and family members freely came in and out of the house or were always in a position to see what transpired in the house, opened the door to extraneous evidence of sexual abuse. *Abshire*, 62 S.W.3d at 860–61; *see also Gilmore v. State*, 493 S.W.2d 163, 164 (Tex. Crim. App. 1973) (denial of ever having committed an armed robbery rendered police testimony concerning a previous robbery permissible); *Alexander v. State*, 476 S.W.2d 10, 11 (Tex. Crim. App. 1972) (defendant's testimony opened door for State's impeachment evidence to correct false impression when he testified that he "had not been in trouble before"); *Carter v. State*, No. 06-02-00174-CR, 2004 WL 726252, at *3 (Tex. App.—Texarkana April 6, 2004, pet. ref'd) (mem. op., not designated for publication) (testimony that defendant and victim and friends never had altercations with pipes or weapons did not leave false impression that defendant had never committed violent act). In order to open the door, there must be more than an implication that the defendant abides by the law; the testimony must in some way convey the impression that he or she has never committed a crime. *Theus*, 845 S.W.2d at 879.

7

126 (Tex. Crim. App. 2006); *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997) ("trial court's decision will be sustained if it is correct on any theory of law applicable to the case, especially with regard to the admission of evidence").

A witness who testifies to a defendant's good character may be cross-examined with relevant and specific instances of misconduct that might affect the opinion of the witness. TEX. R. EVID. 405(a);[7] *Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002). The court held that because a witness testified about his opinion of the defendant—as in this case—the State was then entitled to ask questions about specific criminal acts.[8] Such questions can "demonstrate that the witness has a low standard for what he considers good character by inquiring into prior specific instances of conduct that are inconsistent with the particular character trait." *Wheeler v. State*, 67 S.W.3d 879, 886 n.16 (Tex. Crim. App. 2002).

---

[7]Rule 405 of the Texas Rules of Evidence provides:

> **(a)** **Reputation or Opinion.** In all cases in which evidence of a person's character or character trait is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. In a criminal case, to be qualified to testify at the guilt stage of trial concerning the character or character trait of an accused, a witness must have been familiar with the reputation, or with the underlying facts or information upon which the opinion is based, prior to the day of the offense. In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

> **(b)** **Specific Instances of Conduct.** In cases in which a person's character or character trait is an essential element of a charge, claim or defense, proof may also be made of specific instances of that person's conduct.

TEX. R. EVID. 405.

[8]Although *Wilson* involved testimony at the punishment phase, the Texas Court of Criminal Appeals' reasoning applies in this situation.

8

More recently, a similar situation was presented in *Harrison v. State*, 241 S.W.3d 23 (Tex. Crim. App. 2007). In *Harrison*, a defense witness testified that the defendant "was a sweet person, he was a good person" and that "he done watched my kids and I didn't have a problem with him." *Id.* at 25. In reliance on Rules 404 and 405 of the Texas Rules of Evidence, the court stated, "Although Appellant did not intentionally elicit [the witness'] character testimony, the nonresponsiveness of [the witness'] statement does not change the fact that it was character evidence offered by a defense witness." *Id.* at 27; *see* TEX. R. EVID. 404, 405.[9] Accordingly, cross-examination regarding whether the witness was aware of appellant's prior assault convictions was permitted.

Here, Morrow was asked by defense counsel, "[W]hat kind of person would you say Juan is?" Her direct response that Hernandez was "really nice" to Morrow and her children, that he treated them well, and that he was a "good guy" was undoubtedly testifying to her opinion of Hernandez's good character. Therefore, it was permissible for the State to test her knowledge about specific instances of conduct by asking "did you know" questions. *See Wilson*, 71 S.W.3d at 350.[10] We find no error in the admission of this testimony.[11]

---

[9]Evidence of a person's character is generally not admissible to prove conforming conduct. When a defendant brings his or her character into issue by introducing character or reputation evidence, the State may then offer rebuttal character evidence. TEX. R. EVID. 404(a), 405(a).

[10]The State's questions were framed in terms of "do you know . . .".

[11]Even assuming this evidence was erroneously admitted, such error would have been harmless. Maria Hernandez (Hernandez's sister) was questioned, without objection, much more extensively during the guilt/innocence phase of the trial regarding Hernandez's past criminal history. This testimony established that Maria was aware that

9

### III. Conclusion

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:     August 8, 2011
Date Decided:       September 7, 2011

Publish

---

Hernandez was previously imprisoned; she was not aware that Hernandez was convicted in 2001 in Fannin County for unlawfully carrying a firearm; she was aware that Hernandez was convicted in 2001 for possession of marihuana and was placed on juvenile probation in 1999 for the unauthorized use of a motor vehicle. "Admission of inadmissible evidence is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial." *Broderick v. State*, 35 S.W.3d 67, 75 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989); *Poole v. State*, 974 S.W.2d 892, 899 (Tex. App.—Austin 1998, pet. ref'd)). Given that the jury was provided with a wealth of information regarding Hernandez's criminal history and incarceration during the State's questioning of Maria, to which defense counsel made no objection, the State's brief questioning of Morrow regarding Hernandez's imprisonment would not have been harmful.