

# NUMBER 13-11-00297-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ENRIQUE GUERRA a/k/a ENRIQUE "RICKY" GUERRA,**     **Appellant,**

**v.**

**THE STATE OF TEXAS,**     **Appellee.**

## On appeal from the 24th District Court
## of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Vela, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Enrique Guerra a/k/a Enrique "Ricky" Guerra, appeals his conviction for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). A jury found appellant guilty and sentenced him to life imprisonment in the Texas Department of Criminal Justice, Institutional Division. By a single issue, appellant argues the trial court abused its discretion by allowing testimony regarding appellant's

gang affiliation in violation of Texas Rule of Evidence 404(b).   The testimony was elicited during the State's cross-examination of appellant.   We affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2010, police responded to a report of gunfire in a trailer park in Victoria, Texas.   Upon arrival, police found the body of Joe Angel Caltzontzine ("Joe Angel"), who died from several gunshot wounds.   The shooting took place outside the trailer home of Angel Caltzontzine Lopez ("Caltzontzine"), Joe Angel's father.

Appellant sought to confront Joe Angel and Caltzontzine because he was told Caltzontzine was accusing appellant's mother of taking $400, and because Joe Angel had allegedly pulled a knife on his younger brother.[1]   Appellant claimed that the intent for the confrontation was to stop the harassment of his family.   Upon arrival at Caltzontzine's trailer home, appellant approached Joe Angel and asked him to identify himself. Appellant testified that Joe Angel then struck him on the left side of his face.   Believing Joe Angel had a knife in his hand, appellant drew a pistol from his waistband and shot at Joe Angel.   Before driving away, appellant saw Joe Angel stumbling towards the trailer.

When the SWAT team arrested appellant in Falfurrias, Texas, appellant was staying in an *Hermanos Pistoleros Latinos* ("HPL") safe house.   HPL is a known criminal

---

[1]   Appellant testified as follows when his counsel questioned him:

[Counsel]:      Looking back do you think it was a good idea at all to even go over to the trailer park?

[Appellant]:      No, it was not, but I wanted to get Angel Caltzontzine [Caltzontzine] to stop calling my mom and harassing her about that and I wanted to tell, I wanted to talk to Joe Angel Caltzontzine about why did he do that and because my little brother was shooken [sic] up about it, so I wanted to resolve the situation, I guess.

street gang.  Appellant testified that because of his tattoos displaying the number "45," he carried a gun for his personal protection.  He had heard of other people being harmed while displaying the number "45."  Appellant, however, did not testify that "45" is a gang sign for the HPL.  Concerning his reason for carrying a weapon, appellant testified as follows when his counsel questioned him:

[Counsel]:     Okay.   Why did you have that?

[Appellant]:   For protection.

[Counsel]:     Okay.   Protection from what?

[Appellant]:   From getting jumped.

\*\*\*

[Counsel]:     Okay.  All right.  What made you worry so much that that was going to happen?

[Appellant]:   Because about two months ago before I got the gun there was an incident where somebody wearing a [C]olt 45 hat and he was jumped out of a bar and they tore up his hat and that was the reason why he was jumped was because he was wearing a [C]olt 45 hat.

\*\*\*

[Counsel]:     Okay.   And do you have any idea where the origin of the Colt 45 hat is?

[Appellant]:   An old baseball team.

\*\*\*

[Counsel]:     Okay.   So how does that story relate to your concerns about possibly getting jumped?

[Appellant]:   Because I had a 45 tattoo on my throat and on my eye.

During the State's cross examination, appellant denied being a member of HPL and denied any knowledge that some of his friends were HPL members. Concerning his tattoos, appellant stated he and his older brother decided to get them, independent of any HPL affiliation. As a rebuttal, the State proffered testimony from Officer Travis Stillwell, who interviewed appellant shortly after his arrest. Appellant told Officer Stillwell that he was an HPL member.

After deliberation, the jury found appellant guilty and on the jury's verdict, the trial court sentenced appellant to life in prison. This appeal followed.

## II. DISCUSSION

Appellant claims that the trial court erred in admitting evidence regarding appellant's HPL affiliation. Specifically, appellant argues that error is preserved for review, and that the trial court abused its discretion by admitting evidence of appellant's gang affiliation in violation of Texas Rule of Evidence 404(b). We disagree with appellant's argument that the trial court abused its discretion by admitting the complained-of testimony.

### 1. Preservation of Error

We first address whether appellant has preserved his complaint for appellate review because his initial objection was that testimony concerning HPL affiliation violated the trial court's ruling on appellant's motion in limine. To appeal the admission of evidence, appellant must preserve the error for appellate review. TEX. R. APP. P. 33.1(a). Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion. *See Archie v. State*, 221 S.W.3d 695, 698

4

(Tex. Crim. App. 2007) (citing *Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997)). To preserve an error, appellant must submit a timely and specific objection into the trial-court record. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1). The error alleged on appeal must comport with the objection submitted to the trial court. *See* TEX. R. APP. P. 33.1; *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) ("the legal basis of a complaint raised on appeal cannot vary from that raised at trial").

This Court does not require certain "technical considerations or forms of words to preserve an error for appeal . . . ." *Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009). Clear communication in plain English, rather than "hyper-technical or formalistic . . . words or phrases," is sufficient to preserve error. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex. Crim. App. 1992)). However, the objection must be specific enough so the trial judge can understand the nature of the objection and make an immediate ruling. *Resendez*, 306 S.W.3d at 312–13. Failure to effectively communicate the objection will forfeit an appeal. *Id.* at 313. However, while a specific reference to a rule of evidence may clarify the objection, an objection is not deficient merely because it does not specifically state a rule of evidence. *Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009).

A trial court, in granting or denying a motion in limine, does not preserve any error for appeal. *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003). Merely stating the evidence violates the trial court's previous grant of the motion in limine also does not preserve error for appeal. *Roise v. State*, 7 S.W.3d 225, 240 (Tex.

5

App.—Austin 1999, pet. ref'd); *see also Werdlow v. State*, No. 13–04–004–CR, 2005 Tex. App. LEXIS 6788, at *8 (Tex. App.—Corpus Christi Aug. 22, 2005, no pet.) (mem. op., not designated for publication) (holding defendant failed to preserve error because a hearsay objection was not apparent from the context of the objection relating to the motion in limine).

The legal issue raised by appellant's objection must comport with the legal issue on appeal. *Schultze v. State*, 177 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). In *Jones v. State*, the defendant objected to certain testimony as being a violation of the motion in limine. 111 S.W.3d 600, 604 (Tex. App.—Dallas 2003, pet. ref'd). The objection, however, failed to preserve error for improper introduction of evidence because the objection concerned only the motion in limine and did not comport with the issue of evidence admission. *Id.*; *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, no pet.) (holding objection failed to preserve error because the objection only applied to a violation of the motion in limine and not to the admission of evidence); *see also Lazcano v. State*, No. 14–01–00500–CR, 2002 Tex. App. LEXIS 1540, at *9 (Tex. App.—Houston [14th Dist.] Feb. 28, 2002, no pet.) (mem. op., not designated for publication) (holding objection based on a violation of motion in limine was insufficient to preserve error because the objection did not invoke Texas Rules of Evidence 402, 403, or 404(b)).

Whether appellant's objection preserved the alleged error depends upon the trial court's understanding at the time of trial. *See Resendez*, 306 S.W.3d at 312–313. When the trial judge and opposing counsel understand appellant's objection at the time of

6

trial, appellant does not forfeit an appeal due to an imprecise objection. *Id.*; *Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim. App. 2009); *see also Knowles v. State*, 13–09–00170–CR, 2010 Tex. App. LEXIS 6737, at *18 (Tex. App.—Corpus Christi Aug. 19, 2010, no pet.) (mem. op., not designated for publication) (holding objection preserved the error when the trial judge interpreted the objection to raise the legal issue being presented on appeal). When the trial court's response to an objection indicates a lack of understanding, appellant, by failing to provide additional clarification, does not preserve the error for appeal. *Resendez*, 306 S.W.3d at 313.

Appellant's objection preserved error under Texas Rule of Evidence 404 because both the trial judge and the State understood it as an objection regarding character-propensity evidence. The transcript of appellant's objection is as follows:

[Defense Counsel]: Judge, I'm going object [sic]. We are getting into the —the motion in limine asks that Mr. Tyler approach and make an argument for getting into this area.

\*\*\*

[State]: Of course, that objection has one basis before [appellant] takes the stand, but once he takes the stand, certainly under 38.36 I can go into the relationship between the parties, the propensity of this Defendant to violence and also under 404 intent, opportunity, planning. He's opened up a lot of that and the HPL is, of course, a violent prison gang, and part of the interview he gave he admits to being a member of that gang, so.

[Defense Counsel]: Well, Judge, you know, again, there's no evidence that this is any gang shooting. It's as if, if I, you know, it's a bad comparison, I guess, but if I work for Target or something and then I kill my brother and then Mr. Tyler starts bringing up all kind of environmental problem [sic] that Targets [sic] engages in, how they didn't pay

7

> their people enough and they have this bad corporate reputation. There's no connection to suggest anybody told me at Target to go out and do this. It's my own little crime.
>
> ***
>
> [Trial Court]: All right. I'm going to overrule your objection and give you a running objection.

Based on the initial language, the objection seems insufficient to preserve error because it only invokes the motion in limine. However, the subsequent conversation between the trial court, the State, and appellant reveals that all three understood the objection really related to character-propensity evidence. The common understanding is illustrated both by the State through the specific reference to rule 404, and by appellant through the Target-employment analogy, which related to character-propensity evidence. Like *Resendez*, appellant does not forfeit an appeal because the objection's language was imprecise. *See Resendez*, 306 S.W.3d at 313. Under *Pena* and *Rivas*, appellant is not required to use exact, technical language or to specifically reference rule 404. *See Pena*, 285 S.W.3d at 464; *Rivas*, 275 S.W.3d at 887. Appellant preserved error for review on appeal because the legal issue under rule 404 was apparent to the trial judge and the State.

## 2. Admission of Extraneous Evidence

A trial court's ruling regarding the admission of evidence is reviewed for an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). When a decision is within a "zone of reasonable disagreement," the trial court does not abuse its discretion. *Id.* This high deference exists because "trial courts . . . are usually in the

8

best position to make the call on whether certain evidence should be admitted or excluded." *Id.* (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Even if the trial court provides the wrong reason for admitting evidence, the reviewing court will affirm if the decision is "correct on any theory of law applicable to the case." *Osbourn v. State,* 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). Therefore, the determination of whether extraneous evidence has relevance aside from character conformity, as required by Texas Rule of Evidence 404(b), is within the trial court's discretion. *See* TEX. R. EVID. 404(b); *see also Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Under the applicable law, otherwise inadmissible extraneous evidence is admissible if a party "opens the door" to allow the opposing party to introduce extraneous evidence, *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009), or the extraneous evidence is relevant to rebut an asserted defensive theory. *Moses*, 105 S.W.3d at 627–28.

When a party leaves a false impression with the jury, this opens the door for the opposing party to introduce extraneous evidence to correct the false impression. *See Hayden*, 296 S.W.3d at 554 (citing *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005)); *see also Hernandez v. State*, 351 S.W.3d 156, 160 (Tex. App.—Texarkana 2011, pet. denied); *Winegarner*, 235 S.W.3d 787, 790–91 (Tex. Crim. App. 2007).

Appellant's testimony created a false impression regarding why he was carrying a gun. Appellant testified that the number "45" was associated with an "old baseball team." Without hearing of appellant's affiliation with HPL, the jury could not fully understand why

9

appellant felt threatened through merely hearing of someone being harmed for displaying the number "45." As set forth in *Winegarner*, the trial court could find, within the zone of reasonable disagreement, that appellant created a false impression by failing to clarify why his association with the number "45" prompted him to carry a gun. *See Winegarner*, 235 S.W.3d at 790.

Furthermore, appellant created another false impression by saying that he did not cause problems to the officers at the time of his arrest. Appellant presented the jury with the impression that he was cooperating with police. However, the State attempted to dispel this impression through testimony showing that appellant was in an HPL safe house, watched the SWAT team assemble outside the house, and did not surrender until the SWAT team entered the safe house. Appellant may not elicit favorable testimony and subsequently prevent the State from clarifying with unfavorable testimony. *See id.* Admission of this evidence is not an abuse of discretion because the trial court's decision is within the zone of reasonable disagreement.

The second way to admit evidence of appellant's gang affiliation is to rebut an asserted defensive theory. *See Moses*, 105 S.W.3d at 627–28. When a defendant argues self-defense, the State may introduce evidence of prior violent acts, which tend to show intent or motive. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—Texarkana 2007, no pet.).

Evidence of gang affiliation may be admissible under rule 404(b). *Ortiz v. State*, 93 S.W.3d 79, 94 (Tex. Crim. App. 2002); *Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex. Crim. App. 2002). While evidence of other crimes, wrongs, or acts is inadmissible to

prove the character of a person in order to show action in conformity therewith, it may be admissible for other purposes such as proof of motive. TEX. R. EVID. 404(b). Though motive is not an element of the offense, the prosecution may offer evidence to show motive for the commission of the offense because it is relevant as a circumstance to prove the commission of the offense. *See Crane v. State*, 786 S.W.2d 338, 349–50 (Tex. Crim. App. 1990). Once the opponent of extraneous-acts evidence raises an appropriate character-evidence objection, the proponent of the evidence must satisfy the trial court that the evidence has relevance apart from proving character conformity. *Johnston v. State*, 145 S.W.3d 215, 220 (Tex. Crim. App. 2004); *Lopez v. State*, 200 S.W.3d 246, 252 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd.) (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh'g)). To rebut a theory of self-defense, the State may introduce evidence of gang membership to establish a motive for violence. *See Vasquez*, 67 S.W.3d at 239–40 (concluding gang membership evidence was admissible to establish a connection between the defendant and a gang-related crime).

Appellant asserted a theory of self-defense, testifying that Joe Angel pulled out a knife after striking appellant. The State elicited testimony about appellant's gang membership to establish a motive for the shooting. The State's argument was that appellant's low rank in HPL created a motive to commit a violent act in order to gain full admittance and prestige in HPL. As stated in *Moses*, whether evidence has relevance beyond mere character conformity is within the discretion of the trial court. 105 S.W.3d at 627. By admitting evidence of appellant's gang membership, the trial court did not

11

abuse its discretion because the decision is within the zone of reasonable disagreement.

We overrule appellant's sole issue on appeal.

### III. CONCLUSION

We affirm the trial court's judgment.

Gregory T. Perkes
Justice

Do not publish.   TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of August, 2012.